FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Mar 11, 2026

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| ALAN and CONNIE HILL, individually and as the marital community thereof,<br><br>     Plaintiffs,<br><br> v.<br><br>FARMERS PROPERTY AND CASUALTY INSURANCE COMPANY, an inter-insurance exchange owned by their policyholders and organized under the laws of the State of California and a wholly owned subsidiary of Farmers Group, Inc.,<br><br>     Defendant. | NO. 2:25-CV-0048-TOR<br><br>ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT |

BEFORE THE COURT are Plaintiffs' Motion for Summary Judgment (ECF No. 11), Defendant's Motion for Summary Judgment (ECF No. 23), Plaintiffs' Motion to Strike Declaration of Francis J. Maloney (ECF No. 30), and Plaintiffs' Motion to Strike Declaration of Bernard Maddox (ECF No. 31). Defendant has

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 1

requested oral argument as to its Motion for Summary Judgment (ECF No. 23). The Court has reviewed the record and files herein and is fully informed and does not find oral argument is necessary.  For the reasons discussed below, Plaintiffs' motions to strike (ECF Nos. 30, 31) are **DENIED**, Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED**, Plaintiffs' Motion for Summary Judgment (ECF No. 11) is **DENIED**, and the remaining pending motions (ECF Nos. 39, 41) are **DENIED as moot**.

## BACKGROUND

This case arises out of a dispute over coverage for damages to Plaintiffs' duplex ("the Property") that they own and rent out.  During all relevant times, policy no. 5000229751 (the "Policy") issued to Plaintiffs by Defendant was in effect.  ECF No. 24 at ¶ 1.  On January 19, 2024, a freeze event caused pipes at the Property to freeze and burst (the "Loss").  At that time, the tenants of the Property were on an extended trip out of town, and Plaintiffs had agreed to watch over the Property.  ECF No. 35 at ¶ 4.  During that time, Plaintiffs checked in on the Property and agreed to pay the utility bills during the tenants' absence.  *Id.* at ¶ 5.

From January 11, 2024 through January 19, 2024, Spokane experienced an extreme cold snap with temperatures reaching as low as negative ten degrees Fahrenheit and never rising above freezing during that time.  *Id.* at ¶ 9.  The coldest day was on January 13, 2024 which was the last day that Plaintiffs visited the

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 2

Property prior to the Loss.  *Id.* at ¶¶ 10,12.  On January 19, 2024, Plaintiffs received a report from the neighboring tenants to the Property that water was leaking into the adjacent unit.  ECF No. 12 at ¶ 15.  Upon discovering the Loss, Plaintiffs also found the water in the interior toilets had frozen solid.  ECF No. 20 at ¶ 8.  After the Loss, it was discovered that over a dozen pipes had split at the Property due to the freezing.  *Id.* at ¶ 14.

Plaintiffs submitted a claim for coverage for the Loss under the Policy which includes the following provision.

Section I – Losses We Cover

. . .

Section I – Broad Named Perils

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

. . .

14. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a domestic appliance.

We do not pay for loss on the residence premises while the dwelling is unoccupied, unless you have used reasonable care to maintain heat in the building or have shut off the water supply and drained the water from all plumbing and appliances.

ECF No. 19-1 at 17-18.

On February 2, 2024, Defendant sent a letter to Plaintiffs denying their claim for the Loss on the basis that Plaintiffs did not use reasonable care to maintain heat at

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 3

the Property.  ECF No. 35 at ¶ 17.  After the denial, Plaintiffs hired Property Claim Advocates to represent their claim with Defendant.  *Id.* at ¶ 18.  Upon request, Defendant agreed to reopen the claim based on additional information.  *Id.*  After reviewing such information, Defendant affirmed denial of coverage maintaining its position that Plaintiffs did not use reasonable care to maintain heat.  *Id.* at ¶ 19.

Plaintiffs filed a complaint with the Spokane County Superior Court on December 30, 2024 alleging certain claims including breach of contract, bad faith, negligent claims handling, and claims under the Insurance Fair Conduct Act, RCW § 48.30 *et seq.*, and the Washington Consumer Protection Act.  ECF No. 1-2.  Plaintiffs also seek declaratory judgment that their claim is covered under the Policy.  *Id.*  Defendant subsequently removed the case to this Court on February 11, 2025.  ECF No. 1.

Both parties now move for summary judgment.  ECF Nos. 11, 23.  Plaintiffs move for summary judgment on their claim that coverage is provided under the Policy, and Defendant moves for summary judgment that coverage is not provided under the Policy and seek dismissal of Plaintiffs' remaining claims.  Also before the Court are Plaintiffs' motions to strike two declarations submitted with Defendant's response brief opposing Plaintiffs' summary judgment motion.

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 4

## SUMMARY JUDGMENT STANDARD

When parties file cross-motions for summary judgment, the Court considers each motion on its own merits. *See Fair Housing Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The Court may grant summary judgment in favor of a party who demonstrates "that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In ruling on a motion for summary judgment, the court must only consider admissible evidence. *Orr v. Bank of America, NT & SA*, 285 F.3d 764, 773 (9th Cir. 2002). The party moving for summary judgment bears the initial burden of showing the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to identify specific facts showing there is a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id*. at 252.

For purposes of summary judgment, a fact is "material" if it might affect the outcome of the suit under the governing law. *Id.* at 248. Further, a dispute is "genuine" only where the evidence is such that a reasonable jury could find in favor of the non-moving party. *Id.* The Court views the facts, and all rational

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 5

inferences therefrom, in the light most favorable to the non-moving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). Summary judgment will thus be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

## DISCUSSION

### A. Motions to Strike

Plaintiffs filed motions to strike regarding two declarations submitted with Defendants' opposition to Plaintiffs' motion for summary judgment. ECF Nos. 30, 31. Specifically, Plaintiffs move to strike certain exhibits attached to the declaration of Francis Maloney ("Maloney Declaration") (ECF No. 19) and strike the declaration of Bernard Maddox ("Maddox Declaration") (ECF No. 20) in its entirety.

#### a. *Maloney Declaration*

Plaintiffs seek to strike Exhibits 2, 3, 4, and 6 to the Maloney Declaration. Exhibit 2 contains copies of invoices from Holliday Heating + Cooling + Electric ("Holliday Heating") for the Property for July 12, 2023 and January 19, 2024. ECF No. 19-2. Exhibit 6 is a copy of an invoice from All Star Plumbing, Inc. dated January 31, 2024. ECF No. 19-6.

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 6

Plaintiffs argue Exhibits 2 and 6 are inadmissible hearsay without proper evidentiary foundation with Exhibit 6 having hearsay within hearsay.  ECF No. 30 at 3, 4-5.  Defendant responds that the records at issue were produced by Plaintiffs in discovery, produced pursuant to a subpoena from Holliday Heating and All Star Plumbing, and may be presented in an admissible form at trial through testimony of a records custodian for each respective business.  ECF No. 32 at 6-8.

Rule 56(e) requires that declarations "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  "At the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents."  *Fraser v. Goodale*, 342 F.3d 1032, 1036 (9th Cir. 2003).  Thus, declarations that contain hearsay may be included as evidence for summary judgment purposes if "they could be presented in an admissible form at trial."  *Id.* at 1037.

The Court agrees with Defendant that Exhibits 2 and 6 may be presented in a form admissible at trial such as through the business records exception to the rule against hearsay.  Fed. R. Evid. 803(6).  The Court **denies** Plaintiffs' motion to strike Exhibits 2 and 6.

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 7

Plaintiffs argue Exhibits 3 and 4 are incomplete and misleading and should be stricken pursuant to Fed. R. Evid. 106.  ECF No. 30 at 3-4.  Plaintiffs assert that the deposition excerpts were selectively presented to create a misleading factual presentation.  Defendant responds that Plaintiffs do not identify what portions of excerpts were excluded and how the submitted excerpts are misleading as presented.  ECF No. 32 at 4.

Exhibit 3 is an excerpt from the deposition of Alan Hill.  ECF No. 19-3. Defendant relies on this excerpt in arguing that it both contradicts the Declaration of Alan Hill where Mr. Hill states that he visited the Property nearly daily to check that the furnace was still running (ECF No. 13 at ¶ 3) and that it demonstrates that Mr. Hill did not check the Property at least six days prior to the Loss.  ECF No. 18 at 4-6, 12-13.  The Court has reviewed the additional pages of transcript submitted with Plaintiffs' reply (ECF No. 29-1) and does not find that Exhibit 3 was factually misleading as presented in Defendant's arguments.  Plaintiffs' request to strike Exhibit 3 is **denied**.

Exhibit 4 is excerpts from the deposition of Connie Hill.  ECF No. 19-4. Plaintiffs do not explain how the excerpt or Defendant's use of the excerpt creates a misleading factual presentation, nor do they submit "the additional portions necessary to avoid a misleading presentation."  ECF No. 30 at 4.  The Court therefore **denies** Plaintiffs' Motion to Strike (ECF No. 19) the Declaration of

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 8

Francis J. Maloney submitted in opposition to Plaintiffs' motion for summary judgment.

### b. Maddox Declaration

Plaintiffs argue that the Maddox Declaration does not establish that Bernard Maddox ("Mr. Maddox") is qualified to render technical opinions regarding HVAC operation, heat distribution in a multi-unit structure, and the conditions required for pipes to freeze, nor does he have personal knowledge of the interior conditions of the unit during the relevant period. ECF No. 31 at 3-5. Plaintiffs further argue that Mr. Maddox relied on incomplete and misleading materials in his opinions and that his opinions are speculative and lack foundation. *Id.* at 5-6.

Defendant responds that the Maddox Declaration and Defendant's Disclosure of Expert Witnesses (ECF No. 22) included Mr. Maddox's qualifications; Mr. Maddox's education and training make him qualified to render the opinions in the declaration without personal knowledge of the interior of the unit; and all the exhibits attached to the declaration are capable of being put in an admissible form for trial. ECF No. 32 at 8-11.

Mr. Maddox provides several opinions in the Maddox Declaration. First, in relying on temperature data from January 10 through January 19, 2024, Mr. Maddox opines that "reasonably adequate efforts to heat the property would have prevented any of the pipes from freezing at the Property." ECF No. 20 at ¶ 7. Mr.

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 9

Maddox also opines that for the interior toilets at the Property to freeze solid as Plaintiffs claimed was the case upon discovery of the frozen pipes, the Property would have had to be below freezing for at least two to three days. *Id.* at ¶ 8. Finally, Mr. Maddox opines that based on the daily and monthly natural gas usage for the Property, the HVAC heat at the Property was not turned on from mid-October 2023 until the date of loss on January 19, 2024. *Id.* at ¶¶ 9-11.

The admissibility of expert testimony is governed by Rule 702 of the Federal Rules of Evidence, which provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Fed. R. Evid. 702.

"The determination whether an expert witness has sufficient qualifications to testify is a matter within the district court's discretion." *United States v. Garcia*, 7 F.3d 885, 889 (9th Cir. 1993) (citation omitted). "Rule 702 contemplates a broad conception of expert qualifications." *Hangarter v. Provident Life & Accident Ins. Co.*, 373 F.3d 998, 1015 (9th Cir. 2004) (internal quotation marks and citation omitted) ("[T]he advisory committee notes emphasize that Rule 702 is broadly

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 10

phrased and intended to embrace more than a narrow definition of qualified expert." (citation omitted)).  Where a witness has considerable experience working in a specific field, the witness's "lack of particularized expertise" in one aspect of that field, "goes to the weight accorded her testimony, not to the admissibility of her opinion as an expert." *Garcia*, 7 F.3d at 889-90.  In such situations, "[v]igorous cross-examination, presentation of contrary evidence, and careful [application of] the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 596 (1993).

Here, Mr. Maddox states in his declaration that he works as a Senior Engineer at Talbott Associates, Inc., is a Registered Professional Engineer of Washington, and has over thirty years of experience.  ECF No. 20 at ¶ 4.  His duties as a Senior Engineer at Talbott Associates, Inc. include "performing residential, commercial, vessel, vehicle equipment fire and explosion investigations, failure analysis, automobile, motorcycle, pedestrian and heavy truck accident reconstruction, industrial accident, slip/trip and fall and code compliance investigations, mechanical testing and stress analysis." *Id.* at ¶ 6.  Mr. Maddox also notes that fire and explosion investigations often include energy calculations and analysis as was done in evaluating this incident.  *Id.*  Defendant's Disclosure of Expert Witnesses also includes Mr. Maddox's curriculum vitae listing his

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 11

education, training, and experience as an engineer. ECF No. 22 at 16-18. Mr. Maddox is qualified to testify on the relevant matters as an expert.

Plaintiffs contention that Mr. Maddox lacks personal knowledge of the interior conditions of the unit during the relevant period is also unavailing as he based his opinions "on facts or data in the case that the expert has been made aware of or personally observed." Fed. R. Evid. 703. Moreover, "an expert is permitted wide latitude to offer opinions, including those that are not based on firsthand knowledge or observation" where the expert's opinions have "a reliable basis in the knowledge and experience of his discipline." *Daubert*, 509 U.S. at 592.

Plaintiffs attack the reliability of Mr. Maddox's opinion by arguing that the materials Mr. Maddox relies on are presented in an incomplete and misleading manner because he "does not include the full records, does not explain their context or limitations, and does not account for other information necessary to fairly evaluate what those writings do or do not show." ECF No. 31 at 5. However, Plaintiffs do not explain how or what additional portions are "necessary to avoid a misleading impression." Nor have Plaintiffs submitted any rebuttal expert opinion contradicting Mr. Maddox's findings.

Finally, Plaintiffs argue that Mr. Maddox's conclusions are speculative because he "does not establish a reliable basis for correlating utility usage or

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 12

generalized assumptions to interior temperatures, furnace cycling, or heat distribution within the specific unit at issue." ECF No. 31 at 5-6. Yet, Defendants argue that Plaintiffs themselves used the same temperature data Mr. Maddox relied on and produced the Avista utility bills attached to his declaration, which were also produced via subpoena served on Avista. ECF No. 32 at 10. Moreover, the Court agrees with Defendant that the attached Exhibits are capable of being put in a form which is admissible for trial. *See Gray v. Suttell & Assocs.*, 123 F. Supp. 3d 1283, 1294 (E.D. Wash. 2015) ("At the summary-judgment phase, the Court focuses on the admissibility of the evidence's contents, rather than on the admissibility of its form."). The exhibits relied upon are sufficiently tied to the Property.

Accordingly, for the reasons stated, the Court **denies** Plaintiffs' Motion to Strike (ECF No. 20) the Declaration of Bernard Maddox submitted in opposition to Plaintiffs' motion for summary judgment.

**B. Whether the Policy extends coverage for the Loss**

Both summary judgment motions submitted ask the Court to interpret and assess coverage for the Loss under the Policy. "The interpretation of an insurance policy is a question of law." *Overton v. Consol. Ins. Co.*, 145 Wash. 2d 417, 424 (2002). "Terms in an insurance policy are given their plain, ordinary, and popular meaning as they would be understood by the average purchaser, and

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 13

exclusions in insurance policies are strictly construed against the insurers." *Walla Walla Coll. v. Ohio Cas. Ins. Co.*, 149 Wash. App. 726, 730, (2009).

"The insured bears the burden of showing that coverage exists; the insurer that an exclusion applies." *Mut. of Enumclaw Ins. Co. v. T & G Const., Inc.*, 165 Wash. 2d 255, 268 (2008). "Exclusionary clauses are narrowly construed for the purpose of providing maximum coverage for the insured." *George v. Farmers Ins. Co. of Washington*, 106 Wash. App. 430, 439 (2001).

    i.      *The Declaration of Alan Hill*

As an initial matter, Defendant argues that the Declaration of Alan Hill submitted with Plaintiff's motion for summary judgment should be disregarded or stricken because it directly contradicts his prior deposition testimony. ECF No. 18 at 4. Specifically at issue is Mr. Hill's statement that he "went to the duplex nearly daily and listened to make sure the furnace was running." ECF No. 13 at ¶ 3. Defendant argues this directly contradicts his deposition testimony that he had not checked on the Property for at least six days prior to the date of Loss. ECF Nos. 18 at 4; 19-3 at 8-9.

Plaintiffs reply that Mr. Hill's declaration is not inconsistent with deposition testimony because he testified he routinely monitored the property and entered it periodically to check conditions. ECF No. 27 at 5. He also testified that during the

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 14

coldest period earlier in January he entered the Property, adjusted the thermostat, and believed the furnace was operating. *Id.*

"'The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony.'" *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009) (quoting *Kennedy v. Allied Mut. Ins. Co.,* 952 F.2d 262, 266 (9th Cir. 1991)).  Thus, where a party "has been examined at length on deposition," they cannot "raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony," which "would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact." *Kennedy*, 952 F.2d at 266 (citation omitted).  However, Courts must apply the sham affidavit rule with caution so as to avoid the improper weighing of evidence or making credibility determinations at the summary judgment stage of the proceedings. *Van Asdale*, 577 F.3d at 998.  Therefore, "the inconsistency between a party's deposition testimony and subsequent affidavit must be clear and unambiguous to justify striking the affidavit." *Id.* at 998-99.

Upon reviewing Mr. Hill's declaration and his prior deposition testimony, the Court does not find that the inconsistency is "clear and unambiguous" as to justify striking the declaration.  Mr. Hill states in his declaration, "I did take steps to maintain heat in the duplex.  I had been asked by the tenant to check on the

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 15

duplex while he was out of town.  I did so daily.  I went to the duplex nearly daily and listened to make sure the furnace was running."  ECF No. 2 at ¶ 3.

During Mr. Hill's deposition, he testified that while the tenants were away starting in late October, early November 2023, he looked at the Property "every day, every weekday certainly, some weekends" and "went into the building a couple times a week, maybe three."  ECF No. 29-1 at 3.  Mr. Hill also testified that in the days leading up to the coldest day, January 13, 2024, he entered the Property twice and adjusted the thermostat.  *Id.* at 8-9.  He testified that during the second visit, once he adjusted the thermostat, he "heard the fan go on and left" because "hearing the fan working.  The furnace was working."  *Id.* at 5-6.  Mr. Hill testified that between January 13 and 19 he did not return to check on the Property and stated, "I didn't think it was necessary.  The furnace was working the last time I was there."  ECF No. 29-1 at 11.

The Court cannot conclude this testimony is clearly and unambiguously inconsistent with his declaration that he visited the Property *nearly* daily while his tenant was out of town.  Moreover, Plaintiffs are not disputing the fact that Mr. Hill's last visit to the Property prior to the loss was January 13, 2024.  ECF No. 35 at ¶ 12.  Thus, Defendant's contention that the declaration is an attempt to do so is not supported.  The Court **denies** Defendant's request to disregard or strike the Declaration of Alan Hill.

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 16

*ii.    The Policy*

At the center of each party's motion for summary judgment is whether coverage for the Loss to the Property is excluded under the Policy.

The Policy provides the following:

Section I – Losses We Cover

. . .

Section I – Broad Named Perils

Whenever Broad Named Perils is referred to in this policy, the following causes of loss will apply for sudden and accidental direct physical loss.

. . .

14. Freezing of a plumbing, heating, air conditioning or automatic fire protective sprinkler system or of a domestic appliance.

We do not pay for loss on the residence premises while the dwelling is unoccupied, unless you have used reasonable care to maintain heat in the building or have shut off the water supply and drained the water from all plumbing and appliances.

ECF No. 19-1 at 17-18.

Plaintiffs contend that the term "reasonable care" is not defined in the Policy and is therefore ambiguous and must be read against the insurer.  ECF No. 11 at 9. Plaintiffs additionally argue that undisputed facts demonstrate that Plaintiffs used reasonable care to maintain heat at the Property including routinely checking on the Property to make sure the heat was on, opening cabinets to allow household heat to access the pipes, and by the fact that no pipes have ever frozen prior to the

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 17

Loss in the ten years Plaintiffs have owned the Property.  ECF No. 11 at 9-10.  Plaintiffs also argue that the temperatures in Spokane were so cold that no reasonable efforts could have prevented the pipes from freezing.  ECF No. 12 at ¶ 27.

### iii.    Reasonable care defined

Plaintiffs reason that the Policy's term "reasonable care" is ambiguous because Defendant could have defined it by including specific measures that insureds were required to take.  *Id.* at 9.  This ambiguity combined with the undisputed facts of the steps Plaintiffs did take and the sheer amount of time Plaintiffs have gone without a frozen pipe demonstrates reasonable care.  *Id.* at 9-10.  Defendant responds that the term "reasonable care" is not ambiguous as asserted by Plaintiffs and means just what it states.  ECF No. 18 at 14.

A policy provision is ambiguous where it is "susceptible to two different interpretations, both of which are reasonable."  *Grange Ins. Ass'n v. Roberts*, 179 Wash. App. 739, 751 (2013).  A provision requiring an insured to exercise reasonable care is not ambiguous as "[t]he words are plain and scarcely susceptible of construction."  *Isaacson Iron Works v. Ocean Acc. & Guarantee Corp.*, 191 Wash. 221, 229 (1937).  Reasonable care "is that degree of care which the reasonably prudent person would exercise in the same or similar circumstances."  *Nist v. Tudor*, 67 Wash.2d 322, 331 (1965).  Whether reasonable care was taken is

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 18

a fact-intensive analysis that is generally left to the jury, however, "the court may determine the issue as a matter of law if reasonable minds could not differ." *Harper v. Dep't of Corr.*, 192 Wash. 2d 328, 341 (2018) (internal quotation and citation omitted).

        *iv.*     *Plaintiffs did not use reasonable care as a matter of law.*

After reviewing the undisputed facts and evidence presented by both parties, the Court must agree with Defendant that Plaintiffs did not exercise reasonable care to maintain heat at the Property as a matter of law.

First, Defendant provides records from Holliday Heating evidencing that it had been called to the Property several times and found the furnace to be non-functioning because the filter was clogged. The first visit to the Property was in July of 2023 where Holliday Heating noted that the error history on the control board had all "high limit" errors and the furnace filter was "100% clogged." ECF No. 19-2 at 6. Upon replacing the filter, the furnace was noted to be "back in operation and heating correctly now." *Id.* The invoice provided to Plaintiffs, which was signed by Ms. Hill, included this information and a recommendation that the filter be replaced monthly at least during the heating season. *Id.* at 2.

Holliday Heating was called again to the Property at the time of the January 19, 2024 loss where the control board again had all "high limit" errors and the filter was again 100% clogged. *Id.* at 3. Once the filter was replaced, the furnace

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 19

was "back in operation and heating correctly." *Id.*

Finally, Holliday Heating records show that in April of 2024, Plaintiffs again called Holiday Heating to the Property because the "furnace is not staying on for very long, home owner does not know if they are without heat." ECF No. 19-2 at 6. However, a day later, Holliday Heating reported that the "[c]ustomer called to cancel the appt since she thinks it is just that the filter needed changed and the tenants needed to be shown how to use the t-stat." *Id.* Defendant contends that this evidence demonstrates that Plaintiffs were on notice that they needed to change the furnace filters every month otherwise the furnace would not heat properly, yet failed to do so. ECF Nos. 18 at 8-9, 23 at 5-6.

Plaintiffs respond to this contention both in their reply brief for their summary judgment motion and in their response to Defendant's summary judgment motion. In the reply brief, Plaintiffs again assert that the Maloney Declaration, to which the Holiday Heating invoices are attached, cannot be presented in a form admissible for trial. ECF No. 27 at 7. The Court already addressed this argument in denying Plaintiffs' motion to strike the Maloney Declaration. To re-state, even if Mr. Maloney did not properly authenticate the Holliday Heating invoices in his declaration, the Court must "consider unauthenticated evidence at summary judgment if the evidence can 'be presented in a form that would be admissible' at trial." *Harlow v. Chaffey Cmty. Coll. Dist.*,

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 20

2022 WL 4077103, at *1 (9th Cir. 2022) (quoting Fed. R. Civ. P. 56(c)(2)).  The Holliday Heating invoices and customer records may be admissible in another form at trial such as through the business records exception to the rule against hearsay.  Fed. R. Evid. 803.  Other than challenging admissibility, Plaintiffs do not actually dispute the authenticity or accuracy of the invoices, or that they had been put on notice months before the Loss that the filters needed to be changed monthly.

In the response brief, Plaintiffs argue that the Policy does not exclude coverage for mechanical malfunction or impose strict maintenance compliance as a condition of coverage and whether they were reasonable in their inspections, thermostat adjustments, and belief the furnace was working is a question for the jury.  ECF No. 34 at 9-10.  The Court disagrees.  The mechanical malfunction of the furnace that led to the heat not properly being maintained was from Plaintiffs failing to replace the filter as recommended.  This previous notice, and the fact that the furnace had previously stopped working properly from the very same issue in July 2023, should have alerted Plaintiffs to the possibility that the filter needed to be changed, particularly where the temperature of the Property did not adjust after Mr. Hill raised the thermostat.  Indeed, Mr. Hill testified that in anticipation of the cold weather coming, he entered the Property twice, the second time just two working days prior to the coldest day when temperatures in Spokane dropped to negative ten degrees Fahrenheit.  ECF No. 29-1 at 6.  During that second visit, the

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 21

thermostat indicated the temperature was still forty degrees even though Mr. Hill had raised the thermostat to fifty degrees. *Id.* at 8-9. Mr. Hill conceded that he did not check the furnace but assumed it was working during both visits because he heard the fan come on. ECF No. 19-3 at 6. However, when Mr. Hill was asked during his deposition whether he found it strange that the furnace had not held the adjusted temperature of fifty degrees, he responded that he did.

> A. Yes, I did as a matter of fact, but I didn't think of it. I was in a hurry. I heard the fan go on and took off to get to work, but I did think of it on the way, like why would that be, but I didn't pursue that specifically.

*Id.* at 7.

Mr. Hill's justification that he did not check the furnace, even though he found it strange that the temperature remained at forty degrees, because he was in a hurry does not support a finding of reasonable care. Moreover, despite finding it strange, and knowing of the impending "unprecedented extreme cold snap," Mr. Hill chose not to return to the Property until the Loss occurred six days later. *Id.* at 9, ECF No. 35 at ¶ 3.

Defendant has additionally submitted expert testimony from Mr. Maddox that based on both the Property's Avista utility bills and the periodic daily natural gas usage records provided by Avista, the amount of natural gas usage at the Property from mid-October until the loss was equivalent to the amount of gas to keep a pilot light on the water heater running. ECF No. 18 at 3. Defendant

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 22

contends that this is further evidence of Plaintiffs' failure to take reasonable care in maintaining heat at the Property because Plaintiffs were receiving the Avista utility bills for the Property but did not maintain heat despite the bills indicating negligible natural gas usage.  ECF No. 18 at 9-10.

Indeed, Mr. Hill testified that he reviewed and paid the Avista utility bills for the Property while his tenant was out of town but expected them to be lower both because "there wasn't a lot of use" and "because it was nicer than usual and very good right up until it wasn't."  ECF No. 19-3 at 6.  However, the Avista utility bill reflecting the electric and natural gas usage for the Property from November 8, 2023 to December 11, 2023 listed the daily average temperature as thirty-five degrees Fahrenheit, yet the Property used only 7.056 therms of natural gas during that time, enough to keep the pilot light on the water heater running.  ECF Nos. 20-2 at 6, 20 at ¶ 9.  Defendant's expert also opines that for the water in an interior toilet to completely freeze solid in a duplex constructed like the Property would have likely taken two to three days of below freezing temperatures within the Property.  ECF No. 20 at ¶ 8.

Plaintiffs again assert that Mr. Maddox is not qualified as an expert and improperly relies on hearsay and unauthenticated third-party utility records.  ECF No. 27 at 7-8.  The Court previously addressed Plaintiffs' same arguments in their motion to strike and determined Mr. Maddox was qualified as an expert and the

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 23

records relied upon could be presented in an admissible form at trial.

Viewing all the evidence of the record, even in the light most favorable to Plaintiffs, there is insufficient evidence upon which a reasonable jury could find that Plaintiffs exercised reasonable care to maintain heat in the Property. Plaintiffs' assertion that by simply opening the cabinets to allow heat access to the pipes and believing the furnace was running because the fan came on demonstrates reasonable care is insufficient. Moreover, Plaintiffs' argument that they have taken the same steps to maintain heat at the Property for ten years prior the Loss and never had a frozen pipe similarly does not by default mean they used reasonable care for the claim in question. What is reasonable in one context, may not be in another. The parties agree that Spokane suffered a severe cold snap in the days leading up to the Loss with temperatures reaching as low as negative ten degrees Fahrenheit. ECF Nos. 12 at ¶ 28, 23 at 9. Plaintiffs even assert, although disputed by Defendant, that this was the lowest temperature Spokane had experienced since 1968. ECF No. 12 at ¶ 6. Thus, while Plaintiffs' efforts in the past may have been reasonable, they were not during the cold event that resulted in the Loss.

Mr. Hill's declaration that "no amount of normal reasonable efforts were going to keep the pipes from freezing" is unavailing as it is improperly "based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. Plaintiffs have not submitted any expert testimony supporting

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 24

Mr. Hill's statement.  Additionally, Mr. Hill's assertion that "Heat from one unit warms the other because they are adjacent" is similarly not supported by expert testimony.

Based on Defendant's evidence, unrebutted expert opinion, and Plaintiffs' own admissions, the Court concludes Plaintiffs did not use reasonable care in maintaining the heat in the Property.

**C. Coverage for ensuing water damage**

Plaintiffs argue that a jury could find that the sudden mechanical malfunction of the furnace was the proximate cause of loss and resulting water damage from the pipes freezing and cracking falls within the Policy's coverage for ensuing losses.  ECF No. 34 at 17.  Plaintiffs rely on the following Policy provision  under Section I – Losses We Do Not Cover,

> We pay for any direct loss that follows A. through I. to the property described in Coverages A and B not otherwise excluded or excepted in this policy. We pay only for the ensuing loss. If a covered water loss follows, we will pay the cost of tearing out and replacing any part of the building necessary to repair the plumbing or appliance, but we do not cover loss to the plumbing or appliance from which the water escaped.

ECF No. 14-2 at 24.

The cause of the direct loss was from the pipes freezing and bursting.  This provision clearly states that the coverage is "for any direct loss . . . to the property described in Coverages A and B *not otherwise excluded* or excepted in this

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 25

policy." Loss from the freezing of plumbing while the dwelling is unoccupied is excluded from coverage unless the insured used reasonable care to maintain the heat. ECF No. 19-1 at 18. Plaintiffs did not use reasonable care, therefore, the loss to the Property is excluded from coverage.

Additionally, the Court agrees with Defendant that even under Plaintiffs' argument that the Loss resulted from mechanical malfunction of the furnace, coverage is still precluded under Section I – Losses We Do Not Cover 3(A)

> 3. We do not cover loss or damage to the property described in Coverage A and Coverage B which results directly or indirectly from any of the following:
>
> A. Wear and tear, marring, scratching, aging, deterioration, corrosion, rust, mechanical breakdown, latent defect, inherent vice, or any quality in property that causes it to damage or destroy itself;

The Court must conclude the Loss is not covered under the Policy.

### D. Plaintiffs' CPA and bad faith claims

Defendant moves for summary judgment on Plaintiffs' extracontractual claims of bad faith, violation of the CPA, IFCA, and negligent claims handling on the basis that they all depend solely on whether Defendant acted unreasonably or frivolously under the circumstances, and which Plaintiffs have failed to demonstrate. ECF No. 23 at 13-14.

Plaintiffs' aforementioned claims all rest on the allegation that Defendant acted in bad faith while handling Plaintiffs' claim. ECF No. 1-2 at 7-12. "A denial

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 26

of coverage that is unreasonable, frivolous, or unfounded constitutes bad faith." *Wright v. Safeco Ins. Co. of America*, 124 Wash. App. 263, 279 (2004).  The focus of the bad faith inquiry is whether the insurer's conduct was reasonable and not whether the insurer's interpretation is correct.  *Id.*  "An insurer must make a good faith investigation of the facts before denying coverage and may not deny coverage based on a defense that reasonable investigation would have proved to be without merit."  *Rizzuti v. Basin Travel Serv. of Othello, Inc.*, 125 Wash. App. 602, 618, 105 P.3d 1012, 1020 (2005).

Plaintiffs' bad faith argument rests on their contention that Defendant denied coverage prior to investigating Plaintiffs' claim and only sought additional information after Plaintiffs challenged the denial and retained Property Claim Advocates.  ECF No. 34 at 11-12.  Defendant submits a report of its claim-handling expert, Danette Leonhardi, opining that Defendant's investigation and denial of Plaintiffs' claim was in compliance with industry standards, timely, and was not in bad faith.  ECF No. 23 at 16.  Plaintiffs have not submitted any expert report refuting Defendant's expert.

The initial denial of coverage letter from February 2, 2024, stated, "our investigation found that multiple pipes did freeze, however the heat was not maintained at the property.  Unfortunately, freeze damages are excluded by your policy if the heat is not properly maintained; therefore, no coverage applies to your

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 27

loss." ECF No. 14-1 at 2. The letter also included the statement

> Closing your claim does not prevent you from providing us with additional information, including supplemental claims and requests for recoverable depreciation, within the time limits stated in your policy. We will inform you in writing if any such additional information results in reopening your claim.

ECF No. 14-1 at 2.

After Plaintiffs contested the denial, the claim was escalated for managerial review and more information was provided by Plaintiffs. ECF No. 25-3 at 5. On September 4, 2024, Plaintiffs received another letter reaffirming Defendant's denial of coverage. ECF No. 38-3. After Plaintiffs submitted the notice of their IFCA filing to Defendant on October 8, 2024, Defendant then sought additional utility records including the daily gas readings and requested such information from Plaintiffs four different times. ECF Nos. 25-3 at 6, 38-4, 38-5, 28-6, 38-7. Plaintiffs

Plaintiffs assert that the initial denial of coverage occurred prior to Defendant reviewing any Avista records. ECF No. 35 at ¶ 18. However, Defendant has provided a copy of an excerpt from Defendant's claim file for the Loss that shows the series of steps taken by the claim handler, Sara Tarcan ("Ms. Tarcan"), prior to denying coverage. ECF No. 38-1 at 1. The excerpt shows that on February 1, 2024, Ms. Tarcan reported that she received the Avista heat bills from the insured which revealed "minimal usage and no heat used during winter

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 28

months." *Id.* And on February 2, 2024, Ms. Tarcan noted, "Went over Policy Language with INSD and Utility bills. I apologized that I was unable to extend coverages based on the gas bills are not reflecting that the heat has been properly maintained and the policy states that the property needs to have the heat properly maintained for coverage to be applied." *Id.* Plaintiffs have not produced any evidence or argument disputing the provided excerpts from Defendant. Thus, a conclusory statement that Defendant initially denied coverage without Avista records does not create a genuine dispute of fact in light of the evidence provided.

Based on the above information, the Court does not find Plaintiffs have presented sufficient evidence to support their claims that Defendant did not investigate in good faith prior to denying coverage. Nor have Plaintiffs presented sufficient evidence that Defendant unreasonably or frivolously handled their claims after the initial denial of coverage letter. Therefore, the Court **grants** Defendant's request for summary judgment as to Plaintiffs' extracontractual claims of bad faith, violation of the CPA, IFCA, and negligent claims handling.

As all of Plaintiffs' claims have been dismissed, the case is therefore dismissed and the pending *Daubert* motions are **denied as moot**.

**ACCORDINGLY, IT IS HEREBY ORDERED:**

1. Plaintiffs' Motions to Strike (ECF Nos. 30, 31) are **DENIED**.

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 29

2. Defendant's Motion for Summary Judgment (ECF No. 23) is **GRANTED**.

3. Plaintiffs' Motion for Summary Judgment (ECF No. 11) is **DENIED**.

4. Plaintiffs' Motion to Exclude Expert Testimony (ECF No. 39) is **DENIED as moot**.

5. Defendant's Motion to Exclude Expert Testimony (ECF No. 41) is **DENIED as moot**.

The District Court Executive is directed to enter this Order, enter Judgment in favor of Defendant, furnish copies to counsel, and close the file. The deadlines, hearings and trial date are **VACATED.** Each party to bear its own costs and expenses.

DATED March 11, 2026.



THOMAS O. RICE
United States District Judge

ORDER ON MOTIONS TO STRIKE AND CROSS MOTIONS FOR SUMMARY JUDGMENT ~ 30